## THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* JOHN S. WALLACE

*v.*

### EDWARD S. SALOMON, County Clerk of Cook County.

1. MANDAMUS—*when the writ may be employed.* The writ of mandamus can only be employed where the party injured has a legal right, clearly established, but has no other remedy. If he has an action at law, or a remedy in equity, or there is doubt as to the relator's right to the relief sought, then this writ will not be granted. So, where the proper officer whose duty it is to announce the result of an election, refuses so to do, a writ of mandamus to compel him to perform his duty in that regard, will issue, upon the relation of any voter and tax payer of the locality, whose interests are affected by his refusal.

2. ELECTIONS—*what is an expression of the will of the people.* Where it is required by an act of the legislature, that, before it shall become operative, it shall be submitted to a vote of the legal voters of a designated district to be affected thereby, if the election which is attempted to be held in pursuance of such requirement, proves to have been illegally held in certain precincts within such district, those precincts containing a majority of the voters of such district, then the act will not be deemed to have been submitted to such a vote as its provisions required, and the result will not be declared upon the votes legally cast, adverse to what it would have been if no illegality had intervened.

This was an application to this court, originating in the Third Grand Division, and by agreement of parties, a change of venue was taken to the Second Grand Division, for a writ of mandamus in the name of the People, upon the relation of John S. Wallace, to compel the respondent, Edward S. Salomon, as Clerk of the County Court of Cook County, to certify the result of an election held in the towns of Hyde Park, Lake, and in certain precincts in the town of South Chicago, in Cook county, as required by law, in reference to the submission to the voters in said towns, of an act entitled "an act to provide for the location, improvement and regulation of a Park, for the towns of South Chicago, Hyde Park and Lake," and approved Feb. 27th, 1867. The opinion of the court contains a sufficient statement of the grounds upon which it was based.

Mr. THOMAS HOYNE, for the relator.

Messrs. BECKWITH, AYER & KALES, for the respondent.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The General Assembly, on the 27th of February, 1867, adopted an act providing for the location, improvement and regulation of a Park for the towns of South Chicago, Hyde Park and Lake. After making provisions to carry into effect the objects of its adoption, the seventeenth section provides that the act shall be submitted to a vote in those divisions of the city. That section is this:

"This act shall be submitted to a vote of the legal voters of the towns of South Chicago, Hyde Park and Lake, at an election to be held in said towns, at the usual places of holding elections therein, on the third Tuesday of April, 1867; and such election shall be conducted in the manner provided by law for other elections in said towns. The ballots used in such election shall be written or printed 'For Park,' or 'Against Park,' and if a majority of the votes cast on that subject shall be 'For Park,' then this act shall remain in force, otherwise it shall be void. The votes shall be canvassed, and the returns thereof made, in the manner provided by law for the election of State and county officers, and the Clerk of the County Court of Cook county, shall immediately thereafter cause a certificate of the result of such election to be filed in the office of the Secretary of State, and in the office of the Clerk of the Supreme Court of the Third Grand Division. A copy of this act, when adopted as aforesaid, and of such certificate of said clerk, authenticated under the seal of the Secretary of State, shall be evidence, in all courts and places, of the adoption or rejection of this act, as the case may be."

It is claimed by the relator, that an election was held on the day designated, which resulted in the adoption of the act,

and that it thereby became valid and binding, but that the County clerk refuses to make the requisite certificates, claiming that a majority of the votes cast were "against park," whereby the act by its terms failed to become a law. It is alleged, in the petition for a mandamus, that a legal election was held at the proper time, in the towns of Hyde Park and Lake, and in some of the precincts of the fourth and second wards of the town of South Chicago; that on a canvass the votes thus cast, amounted to 1,330 for the park, and 527 against the park, giving a majority in these towns and precincts of 803 in favor of the act.

It is, however, alleged that there were presented at the same time to the County Clerk, other certificates, made by other inspectors, of an election represented to have been held in other wards and precincts of the town of South Chicago, on the same day, which the relator claims to be illegal and void. That these last certificates stated that there were cast in the first and second precincts of the first ward, and the second precinct of the second ward, the first and second precincts of the third ward, and the first and second precincts of the fifth ward, against park 2,520 votes, and for park 1,420 votes; leaving a majority of 1,100 votes against the park, which, after deducting the 803 majority given for it, a majority of 297 on the entire vote, against the act.

Relator denies that any town election took place on the question, in these last named precincts, which gave a majority against the park. He denies that the election was conducted in the manner prescribed by law for other elections in these towns, and as is required by the seventeenth section of the act.

As to these last returns, it is averred that on the third Tuesday of April, 1867, when the act was submitted, the municipal election of the city of Chicago was also held in South Chicago, in the wards and precincts thereof, for a mayor and other officers of the corporation. That at that election, inspectors appointed by the common council acted as judges of the city

53—46TH ILL.

election, and received all of the votes cast. That they, in the last named precincts, kept no ballot box of the town of South Chicago, required by law at town elections, to receive ballots cast on the queston of the park, as required by the act. That no separate poll list was kept of voters on that question; that their names were not entered in regular succession. That the ballots were not separately endorsed by the judges, with numbers corresponding with the poll list. That the ballots were not strung upon thread or twine, and returned to the county clerk sealed up in an envelope with the poll lists, as required by law.

But on the contrary, that the judges in these last mentioned precincts, deposited all ballots received by them on the question of park, in the same way used for the city election, and were commingled with ballots cast for city officers. And that there were no returns showing a separate town election on the subject of park at those places. That the words for and against park were both printed on the tickets used by those voting at the election for city officers. That without obliterating either from the ballot, many ballots were cast without any change. He also avers, that the votes were not returned, or the poll lists were kept as required by law in town elections, but that none of the requirements of the law were complied with in conducting the election in these precincts.

Relator also avers that the ballots were returned to the city clerk of Chicago, and were canvassed by the common council, who declared the result, and it is averred that the ballots so opened and canvassed, were not cast at an election conducted in the manner required by the act. And that the certificates given by the judges of the city election were not based upon any election whatever, as required by law, and that their certificates are utterly void. That at the second precinct in the fifth ward, the judges refused to receive votes for the park, one of whom testified that they had no authority to hold any town election; that they had no such election,

and had no direction to hold such election. And that the tes-·
timony showed the same to be true of the second precinct of
the second ward. And that, in fact, no election was held in
south Chicago, and the county clerk was requested to reject
the same in computing the result, which he refused to do. He
prays a peremptory writ of mandamus to compel the clerk to
file his certificates of the result of the election in the towns
of Hyde Park and Lake, and the first and second precincts of
the fourth ward, and the first precinct of the second ward, and
reject the returns from all of the other precincts.

To this petition, respondent filed a demurrer, and upon it
the question arises, whether the act of the 27th of February,
1867, became a law, thereby entitling relator to a peremptory
writ of mandamus to compel the county clerk to certify, and
thus give it operation and effect.

The writ of mandamus is only employed when the party
injured has a legal right, but has no other remedy. If the law
has given him an action, then this writ will not be granted.
Or, if his right is equitable, then he must resort to his bill in
equity, that jurisdiction always being able to afford the
requisite relief in such cases. Nor is the writ granted in cases
where the right is doubtful, but it must be clearly established.
Hence, the writ is never granted where the party has another
remedy, because this might prove more speedy or efficacious,
or where there are doubts as to relator's right to the relief sought.
In this case, if the right to the relief exists, there can be no
question as to the right of this remedy, as the courts have
always given the writ in this class of cases.

Then as to the right. The demurrer admits all of the facts
set up and well pleaded in the petition and writ, and about
them there can arise no question. It appears from the aver-
ments, that in a portion of the territory in which the act was
required to be submitted, a legal election was held, and that
the ballots and poll lists were regularly returned to and can-
vassed by the county clerk as required by the act, and in that

portion of the territory the majority of the legal votes cast was in favor of the park. But it is averred, that in the remainder of the precincts, embracing the larger number of the entire vote of all the precincts, if the returns made may be regarded, there was no election, distinct from the city election, held, by town officers as required by the act. And it appears, and is admitted by the petition, that the majority of the votes received by the judges of the city election was largely against the park,—so largely so, if counted, to make a decided majority of all the votes cast in both modes, against the establishment of the park.

While it is not customary to submit an act of the legislature to a vote of the people for adoption or rejection, when it is done, the expression of the will of the voters is substituted for the power of the General Assembly. And when such a course is adopted, it is manifest that it is for the purpose of ascertaining the wishes of a majority of the voters of the designated locality, and to conform to that wish, and the act either becoming a law or ceasing to have effect, according to the result of the vote on its submission. And this being the purpose, and the sole purpose, the will of the voters must be ascertained, and, substantially, in the mode prescribed. If a different mode should be resorted to, it would not conform to the act conferring the power to accept or reject the law. The power having been delegated, must be pursued, substantially, at least. The power to determine flows alone from the General Assembly, and is found in the act, and its requirements must govern the action of the voters and the officers.

Under this act, requiring the question to be submitted to all of the voters of the designated locality, and at an election to be held at all of the precincts within that locality, and for the only purpose of ascertaining the wishes of a majority of the legal voters, they must be afforded a reasonable opportunity to express that will. No one would contend that their will could be ascertained by a statement signed by them, or

by opening the polls at one precinct, thus excluding the voters of the other precincts from participating in determining the question. Nor can it be said that the law would be adopted, if polls were only opened in a fourth, a half, or any other portion of the precincts, as by such a course, the will of those having conferred on them the power to adopt or reject the law, could not be ascertained. By such a course, the only purpose of submitting the question to the voters of the several precincts would be defeated, and hence this law would lack its most essential requisite, the sanction of a majority of the legal voters of the district in which the question was required to be submitted. If then, no election was held, as alleged, in those precincts named, in south Chicago, and in which the majority of the votes were cast, as appears by the returns of the city officers, then this question has not been submitted as the act requires, to the legal voters of the locality designated, and it would therefore follow, that this law has not been adopted by a majority of the legal voters, as is essential to its going into operation.

If, however, it were conceded that the election held by the judges of the city election was unauthorized by the act, the effect would be the same as though none had been held, and it necessarily results that the law has not been adopted. That which is done contrary to law, cannot have validity and force in the law. On the other hand, if it is conceded that the election conducted by the city officers of election, was a substantial compliance with the requirements of the act, then the law was rejected by a decided majority. The whole question then resolves itself into this: If an election was not held in the precincts named in South Chicago, then the law was never submitted to all of the legal voters in the designated territory, and it has never gone into operation. But if an election was legally held in those precincts, then a majority of the votes cast were against the adoption of the act, and it failed to go into operation. In either case, and it matters not which may be assumed

to be true, the result is the same, and the act of the general assembly thus submitted, has never gone into effect, and hence has not conferred the rights claimed and sought to be enforced by this proceeding.

It then follows, that on the facts presented in the writ and admitted by the demurrer, relator has failed to establish his right to the relief claimed, and hence the peremptory writ of mandamus must be refused.

*Mandamus refused.*