NEWTON *et al. v.* FERRILL, ordinary.

There is no law authorizing an election upon the question of "fence or no fence" to be held in any county in this State, or in any militia district thereof, after an election upon that question, already held in and for such county, has resulted in favor of "no fence." After the establishment of the "stock law" in a given

county or militia district, the law does not contemplate a restoration of the pre-existing status as to fences by the holding of further elections.

March 23, 1896. Argued at the last term.

*Mandamus* Before Judge Falligant. Chatham superior court. June term, 1895.

*G. H. Miller, Seabrook & Morgan* and *D. H. Clark,* for plaintiffs. *Saussy & Saussy* and *Garrard, Meldrim & Newman,* for defendant.

LUMPKIN, Justice.

An election upon the question of "fence or no fence" was held in Chatham county, resulting in favor of "no fence," and therefore establishing in that county what is familiarly known as the "stock law." Afterwards, a petition was presented to the ordinary by certain freeholders of the 8th district of that county, for an election on the same question in that district. The ordinary declined to entertain or to act upon the petition, and on *mandamus* proceedings to compel him to do so, his decision was sustained.

The ordinary was right, and the judge of the superior court correctly so held. We have examined all the statutes of this State relating to elections upon the fence question, and it is evident upon their face that the "stock law" is regarded as a beneficial measure, and it is accordingly provided that when once an election has resulted adversely to the establishment of the "stock law," there may, under specified restrictions and conditions, be other and subsequent elections to enable the people to obtain the benefit of that law. But whenever an election has been declared in favor of "no fence," there is no provision in any of the statutes for an election to be thereafter held upon the fence question. In other words, the plain meaning of all the legislative declarations upon the subject is, that "no fence" or the "stock law," when once established, shall be permanent and not thereafter subject to change.

It is true that the law does provide that there may be, in any militia district, an election upon this question in order to obtain the benefit of the "stock law," but manifestly this provision cannot be available when there has already been a county election upon the question resulting in favor of "no fence," thus settling the matter finally and definitely as to the whole county, and of course, as to each and every militia district thereof. Under the old system existing in this State before any of the statutes above referred to were enacted, every landowner was required to enclose with fences, possessing given requisites, all portions of his land from which he desired to exclude the stock of his neighbors. In view of the fact that keeping up fences involved great expense, the legislature, by passing the acts in question, opened up the way for a gradual introduction of the "stock law," by providing for legally conducted elections upon the question. It is evident that when fences are once abolished, it would be exceedingly burdensome, if not entirely impracticable, to restore them; and hence, the legislature in effect said that the people of a given county, or even of a militia district, might have an opportunity of obtaining the "stock law"; failing in the first instance, they might have another, and still another, and so on; but that when once this new law went into effect, there should be no further change in the status.

So, after the adoption in Chatham of the "stock law" for the whole county, there could be no subsequent election in any one or more militia districts of that county for the purpose of restoring fences. This is true, not only because there is no provision of law authorizing such an election, but for the reason that a reopening of the fence question after it had once been definitely and finally determined by popular vote in favor of "no fence" would be contrary to public policy, as above shown.        *Judgment affirmed.*