## 19972.   BRISCOE *et al.* v. BETWEEN CONSOLIDATED SCHOOL DISTRICT *et al.*

DECIDED MAY 20, 1930.

*I. L. Oakes,* for plaintiffs in error.

*Henry H. West, solicitor-general, E. W. Roberts,* contra.

STEPHENS, J. (After stating the foregoing facts.) This case has given us considerable difficulty, but, after careful consideration, we have arrived at the conclusion that the court properly sustained the demurrer and did not err in entering judgment validating the bonds.

The 100 legal votes cast in favor of the issuance of bonds constituted a bare two thirds of the 150 legal votes cast in the election, and therefore operated to carry the election for the issuance of bonds by only one vote. If any one of the six rejected voters had been allowed to vote and had cast his ballot against the issuance of bonds, the result of the election would have been against the issuance of bonds. It therefore appears that the action of the superintendents of the election in rejecting the ballot of any one of the six voters who offered to vote was vital to the result of the election. We are much impressed with the position taken by the intervenors that, by reason of the action of the superintendents of the election

in rejecting the ballots of these voters, the result of the election in favor of the issuance of bonds is illegal. There is abundant authority to the effect that an election is void where the election managers illegally reject a number of legal votes sufficient to determine the result of the election. *Howell* v. *Pate,* 119 *Ga.* 537 (46 S. E. 667), and cit., 9 R. C. L. 1147; 20 C. J. 182; McCrary on Elections, 384. Under the view which we take of the case, it is not necessary to decide this question.

It appears from the allegation in the intervention and from the undisputed evidence adduced in support thereof that the votes of four of the persons who offered to vote were rejected because their names did not appear upon the registration list furnished to the superintendents of the election. The votes of these four persons were properly rejected for this reason. Civil Code, (1910), § 68; *Chapman* v. *Consolidated School Dist.,* 152 *Ga.* 450 (109 S. E. 129). It appears also from the allegations in the intervention and from the undisputed evidence adduced in support thereof that the superintendents of the election rejected the votes of the other two persons who offered to vote, upon the ground that their names did not appear upon the registration list furnished the superintendents of the election. The latter two persons, being qualified registered voters, as appears from the allegations in the intervention and from undisputed evidence, and their names appearing on the registration list furnished the superintendents of the election, they were qualified to vote in the election, and their votes should not have been rejected. Had either one of them been allowed to vote, the result of the election might have been different, and it would have been different had either one voted against the issuance of bonds. The question therefore for determination is whether the rejection of the vote of either of these legally qualified voters was illegal, and, if so, whether his vote could be counted as one against the issuance of bonds, and therefore as carrying the election unfavorably to the issuance of bonds, or whether the rejection of the vote should invalidate the election.

No fraud is charged to the superintendents of election. They are charged merely with rejecting the proffered ballots because they could not find on the registration list the names of the persons offering to vote. They are charged with an honest mistake only. In rejecting the votes of the persons offering to vote they violated

no law, and they are not chargeable with any dereliction of duty. The examination by them of the registration list for the ascertainment of the names thereon and the acceptance of the ballots from persons offering to vote are ministerial acts only. In the performance of these duties the superintendents of election are required to exercise only a degree of diligence and to act in good faith. They are under no absolute duty to refrain from rejecting the ballots of a person legally qualified to vote in the election. Section 77 of the Civil Code of 1910 requires that they shall not "knowingly prohibit" any one "from voting, who is so entitled by law." While there are authorities which hold that where the votes of legally qualified electors have been rejected by the election managers, these votes will either be counted, if so doing would change the result of the election, or the election itself is invalid, these authorities are sustainable upon the theory that the election managers fraudulently and knowingly, or in violation of law, rejected the votes of electors offering to vote. We know of no authority sustainable on principle which holds that where the election managers, without acting fraudulently or without violating any law or rule for the conduct of the election, but acting in good faith, failed to permit a qualified elector to vote, their act amounted to an illegal denial of the elector's right to vote.

We therefore conclude that the superintendents of the election, in refusing to permit any one of the six persons to vote because the person's name did not appear on the registration list furnished to the superintendents of the election, acted in good faith and did not knowingly prevent the person from voting. The superintendents violated no law or rule for the conduct of the election, and therefore did not wrongfully or illegally deprive the elector of his right to vote.

The court did not err in sustaining the demurrer and entering judgment validating the bonds.

*Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*