BRISCOE *et al. v.* BETWEEN CONSOLIDATED SCHOOL DISTRICT *et al.*

No. 7907. January 22, 1931.

*I. L. Oakes,* for plaintiffs in error.

*Henry H. West, solicitor-general,* and *E. W. Roberts,* contra.

Hines, J.   This case is in this court to review the judgment of the Court of Appeals in *Briscoe* v. *Between Consolidated School District,* 41 *Ga. App.* 515 (153 S. E. 437).

■ The Court of Appeals was right in holding that the votes of four of the persons whose names did not appear on the list of registered voters furnished the election managers, and who offered to vote thereat, were properly rejected by the election managers for the reason that their names did not so appear.   This ruling is in accord with the statute of this State and the decisions of this court. Civil Code (1910), § 68; *Cole* v. *McClendon,* 109 *Ga.* 183, 188 (34 S. E. 384) ; *Chapman* v. *Sumner Consolidated School Dist.,* 152 *Ga.* 450 (109 S. E. 129).

■ We come now to consider the question whether the rejection of the votes of two legally qualified voters was illegal, and, if so, whether these votes could be counted as cast against the issuing of bonds, and therefore carry the election unfavorably to the issuance of bonds, or whether the rejection of these votes invalidated this election.   The Court of Appeals held that the rejection of these votes was not illegal and did not invalidate the election.   The decision of the Court of Appeals rests upon the proposition that no fraud is charged to the superintendents of the election, that they are merely charged with rejecting the proffered ballots of two persons offering to vote, and that they are charged with an honest

mistake only. Taking this view, the Court of Appeals held that the superintendents of the election in rejecting the votes of these persons violated no law, and were not chargeable with any dereliction of duty, bcause in examining the registration lists for the purpose of ascertaining the names thereon and accepting the ballots of persons offering to vote they acted merely in a ministerial capacity, and in the performance of their duties were "required to exercise only a degree of diligence and to act in good faith." Taking this view, that court held that the superintendents of the election were "under no absolute duty to refrain from rejecting the ballots of a person legally qualified to vote in the election." We can not agree to this proposition, for the reasons, first, that it is not sustained by the facts in the record; and second, because the proposition is not legally sound if it rested upon the facts assumed. One of the voters whose ballot was rejected was J. R. Ivey, whose name was on the list furnished by the tax-collector to the election managers. In making up the list the tax-collector failed to get his name under the list of voters whose surnames began with the letter I, but entered it in the list of voters whose surnames began with the letter B. This voter "was not allowed to vote, because his name did not appear alphabetically under the Is." Another voter who was not allowed to vote was J. W. Stevens. He "was not allowed to vote because his name was on the list as Wilson Stevens." This voter goes by the name of Wilson Stevens, and is the same person as J. W. Stevens. It is conceded in the opinion of the Court of Appeals that if the ballot of either of these persons had been received when tendered, and they had been permitted to vote, the election would not have gone in favor of the issuing of these bonds.

Under the facts recited, it does not appear that the managers of the election acted in good faith, unless this conclusion can be drawn from the presumption that these managers so acted. These two voters were legal voters. Their names appeared upon the registration list furnished by the tax-collector of voters qualified to vote in this election. It was alleged, in the intervention of the parties who attacked this election as illegal because the votes of these two parties were rejected, that their votes were rejected because the name of the voter Ivey did not appear on the registration list under the list of persons whose surnames began with the letter I, but under the list of persons whose surnames began with the letter B;

and the name of the voter Stevens appeared on the registration list as Wilson Stevens, he being known by that name, and being the same person as J. W. Stevens. These facts are admitted by the demurrer to the pleading in which they are alleged. It nowhere appears that the managers of the election did not know that Ivey was on the registration list, and that his vote was rejected because it was not known to the managers that he was on the list because his name appeared under the letter B and not under the letter I. It nowhere appears that the managers did not know that Wilson Stevens was J. W. Stevens. On the contrary it is alleged, and this fact is admitted by the demurrer, that he was known as Wilson Stevens. It is alleged, and this fact is admitted by the demurrer, that the vote of Ivey was rejected because his name appeared under the letter B and not under the letter I in the registration list. It was alleged, and this fact is admitted by the demurrer, that the vote of J. W. Stevens was rejected because his name appeared on the registration list furnished by the tax-collector as Wilson Stevens and not as J. W. Stevens. In these circumstances it can not be assumed that the managers did not know these facts and that they acted in good faith in rejecting the votes of these two persons. Besides, there were only 176 voters registered in the district; and in the absence of proof to the contrary it can fairly be inferred that these managers were acquainted with these two persons, and that they rejected their votes because there was an irregularity in the place on the registration list where Ivey's name appeared, and because J. W. Stevens' name appeared on the registration list only as Wilson Stevens.

But conceding that the managers acted in good faith in rejecting the votes of these two persons, how does the matter stand? The Court of Appeals based its conclusion that the rejection of the votes of these two persons was legal upon that portion of the oath of election superintendents which requires that they shall not "knowingly prohibit any one from voting who is so entitled by law." Civil Code (1910), § 77. This provision was not intended to make legal the rejection by the election managers of persons legally entitled to register and to vote, and who have duly registered, and whose names appear upon the list of registered voters furnished by the tax-collector to the election managers in a case of this kind. Its purpose was to protect the election managers from liability when

they did not knowingly reject the votes of persons who proposed to vote, and to safeguard pro tanto the right of persons entitled to register and vote from being prohibited so to do by the managers when these officers knew that the prohibition was illegal. This provision should not be so construed as to authorize election managers to prohibit persons from voting whose names appear on the registration lists furnished to the managers of the election, whether the managers act with bad faith or whether their action in so doing was done in good faith. To give this section the construction placed upon it by the Court of Appeals would render it void, because it would violate the provision of the constitution of this State that every citizen thereof, who is a citizen of the United States, twenty-one years old and upwards, not laboring under any disability named in the constitution, and possessing the qualifications provided by it, shall be an elector, and entitled to register and vote at any election by the people. Art. 2, sec. 1, par. 2 (Civil Code (1910), § 6396). All persons whose names appear on the list of registered voters placed in possession of the election managers shall be allowed to deposit their ballots according to law. Civil Code (1910), § 68. The list of registered voters furnished by the tax-collector to the managers of the election absolutely controls the managers, and they have no power or authority to allow any one to vote whose name is not on the list, or to refuse any one the right to vote whose name is on the list, even though there may have been irregularities in the entering of their names thereon. *Cole* v. *McClendon,* supra. In an election upon the question of issuing bonds for building and equipping a schoolhouse in a school district, the registration list of voters, as furnished by the tax-collector to the election managers, shows the persons entitled to vote. *Fairburn School Dist.* v. *McLarin,* 166 Ga. 867 (144 S. E. 765).

There are authorities and decisions which hold that the exclusion of legal voters, not fraudulently done, but through error in judgment, will not defeat an election, notwithstanding the error in such case is one for which there is no mode of contesting by the aid of the courts, since it can not be known with certainty afterwards how the excluded electors would have voted, and it would obviously be dangerous to receive and rely upon the subsequent statement of the voters as to their intentions, after it is ascertained precisely what effect their votes would have upon the result. Cooley's Const.

Lim. 781; Boyer *v.* Teague, 106 N. C. 576 (11 S. E. 665, 19 Am. St. R. 547, 561) ; Pennington *v.* Hare, 60° Minn. 146 (62 N. W. 116) ; State ex rel. Wold *v.* Hanson, 87 Wis. 177 (58 N. W. 237, 41 Am. St. R. 38). But the true rule is that the election will be avoided when, and only when, there is injected into it the insurmountable uncertainty incident to the rejection of the votes of electors in sufficient numbers to overcome the apparent and announced result of the election, if they had all voted against the result reached. Neither corruption nor fraud is necessary where enough votes to change the result have been disfranchised. *Howell* v. *Pate,* 119 *Ga.* 537 (46 S. E. 667) ; State *v.* Judge, 13 Ala. 805; Patten *v.* Coates, 41 Ark. 111; People *v.* Salomon, 46 Ill. 415; Coggeshall *v.* DesMoines, 138 Iowa, 730 (117 N. W. 309, 128 Am. St. R. 221) ; Scholl *v.* Bell, 125 Ky. 750 (102 S. W. 248) ; Webre *v.* Wilton, 29 La. Ann. 610; Renner *v.* Bennett, 21 Ohio St. 431; Martin *v.* McGarr, 27 Okla. 653 (117 Pac. 323, 38 L. R. A. (N. S.) 1007) ; Callison *v.* Peeples, 102 S. C. 256 (86 S. E. 635, Ann. Cas. 1917E, 469) ; Maloney *v.* Collier, 112 Tenn. 78 (83 S. W. 667) ; Marsden *v.* Troy (Tex.), 189 S. W. 960; 9 R. C. L. 1147, § 139. In some of the cases above cited, the exclusion was of classes of persons; and some courts make a distinction between the exclusion of classes of persons qualified to vote and the exclusion of individual voters qualified to vote. In *Howell* v. *Pate,* supra. this court held that an exclusion of persons qualified and offering to vote, solely on account of color, rendered the election void. The decision was put upon cases which involved the exclusion of individual voters qualified and offering to vote. There seems to us to be no valid distinction between the exclusion of classes of voters and of individual voters qualified and offering to vote. What renders the election void is the uncertainty of the result if all persons qualified and offering to vote had been permitted to vote; and this reason is as cogent in cases where the exclusion is of individual voters as in cases of the exclusion of classes of voters.

The question whether the exclusion of the votes of individuals qualified and offering to vote, which excluded votes would have changed the result if they had been cast all one way, would render the election void, is for decision by this court for the first time. We are of the opinion that the exclusion of such votes renders so uncertain the question whether a proper result has been

reached that the election should be declared invalid and void. Of course if the exclusion of votes were due to fraud or bad faith, the case would be stronger.

We reverse the judgment and remand the case to the Court of Appeals, that further action may be taken in accordance with this opinion. *Judgment reversed.* *All the Justices concur.*