KIMZEY *et al. v.* MICKEL *et al.*

No. 13368.   NOVEMBER 14, 1940.

*A. H. Henderson, Boyd Sloan,* and *Sam S. Harben,* for plaintiffs in error.

*C. H. Edwards, Charles J. Thurmond,* and *Wheeler Kenyon,* contra.

BELL, Justice.   In the brief of counsel for the plaintiffs in error,

defendants in the court below, it is stated that there are four primary questions for determination. We shall deal with these questions, so far as necessary, in the order in which they are stated in the brief. The first question is whether the ordinary of White County had authority to call a county-wide election, when seven of the ten militia districts had already adopted the no-fence or stock law by district elections. We answer this question in the affirmative. The Code, § 62-501, provides that on prescribed conditions as to petition of freeholders the ordinary of any county shall "proceed to have an election held in such county on the first Wednesday in July following, in which the question shall be submitted to the lawful voters of said county." The section further provides: "Said election to be held at the court-house or ground in each militia district and under the same rules and regulations as provided for election of members of the General Assembly, and after 30 days notice posted at the most public places in said county. No person shall be allowed to vote at said election except in the militia district in which he resides: Provided, that such election shall not be held oftener than once in any year. The returns of said election shall be made to the ordinary, who, after examining the same and deciding upon all questions which may arise out of said election, shall proclam the result by notice as aforesaid. If the lawful majority in said election is for 'no fence,' then said provisions shall take effect in such county within six months thereafter." Section 62-502 provides for *district* elections. There is nothing in either section, nor in any other statute, from which it may be concluded that the law as to calling and holding a county-wide election shall cease to be operative in any county, because the no-fence or stock law may have been adopted in one or more of the districts of such county. Nothing to the contrary was held in *Newton* v. *Ferrill*, 98 *Ga.* 216 (25 S. E. 422). In that case it appeared that after the no-fence law had been adopted in Chatham County as a whole, a petition was presented to the ordinary by freeholders of one of the militia districts for an election on the same question in that district. The ordinary declined to entertain the petition, and a suit for the writ of mandamus followed. It was held by this court that after the establishment of the stock law in a given county or militia district, "the law does not contemplate a restoration of the pre-existing status as to fences by the holding of further elec-

tions." The present county-wide election, if carried into effect, would not restore the pre-existing status as to fences in any district of the county, but would simply put the stock law into operation throughout the entire county, whereas before the election it was already in force by separate units in seven of the ten militia districts. The decision in the *Newton* case does not support the contention that after the adoption of such law in one or any number of the militia districts, the ordinary would not be authorized to cause an election on the question of fence or no fence for the entire county. While it is not material in the present case, it may be noticed in this connection that the law as declared in that decision was later changed by statute. See Ga. L. 1905, p. 132, Code, § 62-505.

■ Nor is there any merit in the second contention, namely, that even if the ordinary did have such authority, the voters of the seven militia districts which had previously adopted the stock law by district elections would not be entitled to vote in such county-wide election. The Code, § 62-517, relating to district elections, provides that "Nothing herein contained shall prevent any district which has adopted this law from voting at any county election on the stock law." Since there was no statute prohibiting the voters in such district from voting in a county-wide election, it would seem that they would have been entitled to vote in such election, even without this proviso. However that may be, we are satisfied from the entire law upon the subject that it was the intention of the General Assembly to permit all of the qualified voters to have a voice in such county-wide issue. So the election was not void because voters of the seven existing stock-law districts were allowed to vote in this election, in which the question of fence or no fence for the county as a whole was submitted to the voters for determination.

■ The next question as stated by counsel is whether the ordinary had authority to declare the "no-fence or stock law" to be the law in White County, or did his authority extend merely to declaring the result of the election? This question is raised both by averments in the cross-action, considered with the demurrer thereto, and by objection to evidence. It will be sufficient in this connection to refer only to the question as presented by the latter method, since the ruling that we are about to make will apply both

to the pleadings and the evidence; not as to the precise question, however, decision thereon, as will be seen, not being required by the record.

The plaintiffs introduced in evidence an order signed by the ordinary, dated July 6, 1939, declaring the result of such election. Preceding the formal statement of the result was a list of the various districts, ten in all, with a statement of the number of votes cast for and against the stock law in each of the districts. From the total vote thus shown, it appeared that a majority of twenty-eight votes was cast for the stock law. After this enumeration, the order declared: "For stock law having received a majority, it is therefore considered, ordered, and adjudged by the undersigned ordinary that stock law, or no-fence law, is the law of said County of White to go into effect, county-wide, as the law directs, on the 15th day of December, 1939."

The judge did not err in admitting this order in evidence, as against the contention that the ordinary had no authority to declare the stock law to be effective in White County. The order was admissible as a proclamation of the result; and even if the ordinary exceeded his authority in going further, the superadded declaration was separable and did not vitiate the whole. As to sufficiency of the order as a proclamation of result, compare *Chamlee* v. *Davis*, 115 *Ga.* 266 (41 S. E. 691).

It is argued in the brief that this order was invalid for the further reason that it nowhere recites that the ordinary proclaimed the result "by notice as aforesaid," in compliance with the Code, § 62-501. No such objection was made to the evidence, and this contention can not be considered. But it might be said, in this connection, that in the absence of anything to the contrary it will be presumed that the ordinary gave such notice of the result as the law may have required. The order here under consideration, so far as it relates to how the majority voted, does not fall within the rulings in *Johnson* v. *Tanner*, 126 *Ga.* 718 (6) (56 S. E. 80), and *Beaver* v. *Lowe*, 145 *Ga.* 52 (4) (88 S. E. 573). These decisions dealt with the question of construction of fences around militia districts after district elections in favor of the stock law; and it was held that the ordinary had no authority or jurisdiction to pass any order declaring that such condition precedent as to construction of fences had been complied with. These decisions were based

upon what is now section 62-502 of the Code, a careful examination of which will show that the present question is entirely different and must depend on some other law. It is controlled by section 62-501, supra, relating in part to numerical result as shown by the returns.

■ The next question as stated in the brief is whether the defendants had "the right to attack the validity of said election in this action." In the view which we take of the case as a whole, we do not deem it necessary to make a ruling upon this question; for, even assuming that the defendants were entitled to show as a matter of defense that the election was absolutely void, we are of the opinion that it did not appear to be void from anything alleged in the plaintiffs' petition, and that the attacks made on it by the defendants were insufficient. We will now examine these attacks as they were made in the answer and cross-action. The defendants alleged that the election was void for the reason that eight named qualified voters of the Tesnatee District were denied the right to vote in such election, that these eight voters would have voted against the stock law, and that if they had been permitted to vote the result of the election would have been different. These allegations do not show that the election was void, since it elsewhere appeared in the answer that according to the result as declared by the ordinary the election was in favor of the stock law by a majority of twenty-eight votes. Manifestly it would not have changed the result if only the eight voters of the Tesnatee district had been permitted to vote and had voted against the no-fence law.

The answer next alleged that twenty-six named voters of Chattahoochee District were "left off" the registration list, although they were otherwise qualified, and that if they had been permitted to vote, the result would have been different. Similar allegations were made with reference to twenty-one voters who resided in the Nacoochee District. These averments, as to the voters of both districts, were utterly nugatory as showing or tending to show that the election was invalid. This is true for the reason that these persons were not entitled to vote if their names did not appear upon the registration list, and in the circumstances the election managers properly rejected the votes tendered by them. Code, §§ 34-404, 62-501; *Chapman* v. *Sumner Consolidated School District*, 152 *Ga.* 450 (2) (109 S. E. 129); *Goolsby* v. *Stephens,*

155 *Ga.* 529 (2, 3) (117 S. E. 439) ; *Fairburn School District* v. *McLarin*, 166 *Ga.* 867 (144 S. E. 765) ; *Briscoe* v. *Between Consolidated School District,* 171 *Ga.* 820 (156 S. E. 654) ; *Turk* v. *Royal,* 34 *Ga. App.* 717 (8) (131 S. E. 119).

We have now, in this and the preceding divisions, dealt with all the attacks made upon this election, except the contention based on the evidence that thirty-three persons who applied to vote were not permitted to do so, and that if they had been allowed to vote they would have cast their ballots against the stock law, and the result of the election would have been different. A comparison of the names of those who *testified* that they were denied the right to vote shows that nineteen of them were persons whose names were *alleged* in the cross-action to have been "left off" the registration list. Although these averments were stricken on demurrer and were not formally introduced in evidence, the judge, trying the case on interlocutory hearing, could consider them as evidence against the defendants on the issue as to the right of such persons to vote in this election. Code, § 38-402; *Fite* v. *Black,* 92 *Ga.* 363 (17 S. E. 349) ; *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945) ; *Cooley* v. *Abbey,* 111 *Ga.* 439 (3), 443 (36 S. E. 786) ; *Williams* v. *Fouché,* 164 *Ga.* 311 (138 S. E. 580) ; *Daniels* v. *Booker,* 23 *Ga. App.* 644 (4) (99 S. E. 228). If, as the judge was thus authorized to find, these nineteen persons were not entitled to vote, the fact that they were denied the privilege of so doing did not tend to show that the election was invalid; and this is true whether the names of these persons are considered by themselves or in connection with the names of others whose votes were rejected by the election managers.

It further appeared from the evidence that fourteen of the persons who testified that they would have voted against the stock law if they had been permitted to vote were not in any manner mentioned in the defendants' pleadings, so far as we are able to discern from the bill of exceptions and the record. Whether or not the *lack* of any pleadings as to the names of these persons should be considered as sufficient reason for disregarding the evidence, and even to give full force and weight to such evidence (but see *Edenfield* v. *Smith,* 36 *Ga. App.* 682 (2), 137 S. E. 841; *Southern Crushed Stone & Granite Co.* v. *Dorn,* 37 *Ga. App.* 564, 141 S. E. 59), the votes of these fourteen persons could not have changed the

result. Nor would the result have been changed by the addition of these names to the names of the eight voters first mentioned in this division, since the total thus arrived at would have been only twenty-two, whereas, according to the result as consolidated by the ordinary, the election resulted in favor of stock law by a majority of twenty-eight votes. Accordingly, in no view of the case was it shown that the election was void on the ground that the managers rejected a sufficient number of legal votes to have changed the result.

· ■ There are several subordinate questions, among them, whether the petition was multifarious and contained a misjoinder of parties defendant. "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." Code, § 37-1007. Under this principle, the petition was maintainable for the purpose of avoiding a multiplicity of actions, was not multifarious, and did not contain a misjoinder of parties defendant; nor was it subject to demurrer on the ground that the plaintiffs had an adequate remedy at law. See *Sanders* v. *Gainesville*, 141 *Ga.* 441 (3) (81 S. E. 215); *City of Camilla* v. *Cochran*, 160 *Ga.* 424 (128 S. E. 194); *Dobbs* v. *Federal Deposit Insurance Corporation*, 187 *Ga.* 569 (1 S. E. 2d, 672); *Benton* v. *Turk*, 188 *Ga.* 710 (7) (4 S. E. 2d, 580).

There was no merit in any of the grounds of demurrer taken by the defendants, unless in the one special ground which was sustained by the judge. The cross-action did not set forth any valid defense, and was properly stricken on the general demurrer of the plaintiffs. Nor did the judge err in granting an interlocutory injunction as prayed by the plaintiffs.

*Judgment affirmed. All the Justices concur.*