145 P.2d 487

**MIERA v. MARTINEZ.**

No. 4787.

Supreme Court of New Mexico.

Jan. 24, 1944.

Louis C. Lujan, of Santa Fe, and Fred E. Wilson, of Albuquerque, for appellant.

F. T. Cheetham, of Taos, and Reese P. Fullerton, of Santa Fe, for appellee.

SADLER, Chief Justice.

This is a contested election case. The contestant (appellee here) and the contestee were rival candidates for the office of Sheriff of Taos County in the general election held on November 3, 1942. The contestee received the certificate of election to the office following the official canvass by the Board of County Commissioners sitting as the County Canvassing Board. The canvass as conducted by the board showed the contestant to have received 2281 votes and the contestee 2297 votes, giving the latter a majority of 16 votes for the office mentioned.

In conducting the canvass the board did not include returns from Precinct No. 25 in Taos County, known as the Rodarte Precinct. If included, as the trial court found or concluded it should have been, in this contest later instituted by the contestant, his total vote for sheriff was 2395 and that of the contestee was 2359, giving the former a clear majority. Having so

determined, the trial court rendered judgment for the contestant, declaring him to have been duly elected to the office involved and entitled to "all the privileges, power and emoluments belonging thereto". The judgment contains language of ouster of contestee from the office and ordering the contestant to be placed in possession thereof. This appeal followed.

In conducting the official canvass of the results of the election, the County Commissioners did not include Rodarte Precinct, as already noted. However, the results without the count from this precinct were tabulated. The canvass was then recessed to await the result of proceedings before the district court of the county, initiated by the County Canvassers under 1941 Comp. § 56-349(6) by an entry in the minutes of the proceedings which, in so far as material, reads as follows:

"The Board at this time finds the Poll Books from Precinct No. 25, Rodarte, defective so this Precinct is not finished today and the following is written to Judge Taylor.

"To the Honorable Judge of the 8th Judicial District Sitting in and for the County of Taos.

"Dear Judge:—

"You are hereby notified that the returns of the last election held in Taos County, New Mexico on the 3rd day of November, 1942, are defective in and for Precinct No. 25, Rodarte, New Mexico, in that the vote cast for said Precinct was not tallied and placed in Poll Book, and that said vote cast cannot be corrected without a recount of the ballots of said Precinct as provided by law: * * *".

The letter to the district judge was filed as a petition and docketed on the civil docket of the district court as Cause No. 3828, whereupon the district judge entered an order fixing Tuesday, November 17, 1942, in the court house at Taos, as the time and place for a recount of the ballots in Rodarte and one other precinct. The clerk was ordered to give notice to the County Chairman of each dominant political party of the time and place for the recount and also was directed to summon the election officials of the precincts involved. Whatever order, if any, was entered by the district court in the proceeding in Cause No. 3828, is not before us. However, a transcript of the proceedings at such hearing appears in the record filed in this court. It discloses comment of the district judge, following testimony of certain of the election officials, as well as colloquy between him and one of the counsel now appearing for contestant in the contest, in which the district judge announced that he was excluding the Rodarte precinct from the canvass.

In this hearing before the district court, initiated as a recount proceeding, the district judge did not proceed with the recount because upon an examination of the returns it was held that some unregistered electors had voted and, the election officials having failed to place opposite the name of the voter the number of the ballot cast

by him, as required by 1941 Comp. § 56-313, there was no way of determining for whom the unregistered voter had cast his ballot. After these conclusions, there followed the announcement by the district judge that the Rodarte box would be excluded from the canvass in accordance with what was considered a mandatory requirement in such circumstances under the provisions of the controlling statute, 1941 Comp. § 56-349(6).

In explanation of the failure of the election officials to enter opposite the name of each voter the number of the ballot cast by him, it may be said that this was due to ignorance and inexperience on their part as the district judge himself concluded, attributing the omission to "honest mistake" on their part. As a matter of fact, they started in with No. 1 and placed that number in the poll book opposite the name of every voter who cast a ballot.

In due course, and seasonably, the contestant as the defeated candidate on the face of the returns officially canvassed instituted this contest proceeding against the contestee alleging that he, the contestant, had received the greater number of the legal votes cast for the office of sheriff of Taos County at the general election held on November 3, 1942. Specifically, he alleged that he had received 114 votes in the Rodarte Precinct as against 62 votes cast for the contestee, as officially certified to the County Canvassing Board of said precinct, "but that the County Canvassing Board of the County of Taos, State of New Mexico, did in their canvass fail to credit either contestant or contestee with having received any votes in said precinct".

These allegations by the contestant were met by specific denials of the contestee, who set up by way of affirmative defense that the vote of the Rodarte Precinct had been properly excluded from the canvass as a result of the proceedings before the district court hereinabove related as having been conducted under the provisions of 1941 Comp. § 56-349(6). Thus it results that the sole question for decision before the district court in the contest was whether the vote of the Rodarte Precinct was entitled to be included in the official canvass of the election involved.

The court heard evidence and made findings from which it concluded the contestant was entitled to judgment declaring him to be the duly elected sheriff of Taos County. Following are the findings and the trial court's conclusion thereon, to-wit:

"1. That the court has jurisdiction of the subject matter and of the parties to this action.

"2. That the hearing in this matter is not res adjudicata by virtue of Cause No. 3828 of this Court as contended by the contestee, and the court in said cause No. 3828 had no jurisdiction to throw out Rodarte precinct No. 25 of Taos County, New Mexico, as shown by the record of the canvassing board of Taos County, and that in fact said purported Order in said cause No. 3828 amounts to no order at all, and

that the within case shall proceed as and if the court in Cause No. 3828 had sat merely in a ministerial capacity;

"3. That it was stipulated in open court pending said trial, by and between contestant and contestee that the only votes regarding which there is a question concerning whether the voter was registered or not, are the following: Mrs. Aniseta Medina, Mrs. Juan Manuel Romero, Mrs. Noberto Cruz, Mr. Felipe Romero, Mr. Jose F. Muniz, Mr. Severiano Muniz, and Mrs. Severiano Muniz.

"4. That Mrs. Aniseta Medina and Mrs. Neseito Medina is one and the same person; that Mrs. Juan Manuel Romero and Mrs. Manuel Romero is one and the same person; that Mrs. Noberto Cruz and Mrs. Celinia Cruz and Mrs. Celina Cruz is one and the same person; that Mr. Felipe Romero and Mr. Felipe Santiago Romero is one and the same person; that Mr. Jose F. Muniz and Jose E. Muniz as printed and Jose F. Muniz as signed by him on his registration certificate is one and the same person; that Mr. Severiano Muniz and Jose S. Muniz is one and the same person; and that Mrs. Severiano Muniz and Mrs. Jose S. Muniz is one and the same person.

"5. That each and every and all of the above named persons voted in the general election held in Precinct No. 25, Rodarte, Taos County, New Mexico, on November 3, 1942, and at the time of so voting they were each and all of them duly registered under the election laws of the State of New Mexico and each entitled to vote at said election.

"6. That the election officials conducting the said election in said precinct did count 114 votes for contestant and 62 votes for contestee, and that in certifying the result of the votes cast in said precinct to the County Canvassing Board made a return that contestant had received 114 votes and contestee had received 62 votes.

"7. That the County Commissioners sitting as a County Canvassing Board of the County of Taos, State of New Mexico, did in their canvass of said election fail to credit either contestant or contestee with having received any votes in said precinct, but that said board should have canvassed said votes as set forth in paragraph '6' hereof.

"8. That contestant received a greater number of legal votes cast for said office of Sheriff of Taos County, State of New Mexico, at the general election held within said Taos County on the 3d day of November, 1942, than did the said contestee, the contestant receiving a total of 2395 votes and the contestee receiving only 2359 votes.

"From all of which the Court concludes as a matter of law that the contestant is entitled to the relief prayed for in his Notice of Contest."

It thus is seen that as found by the trial court, the only electors whose registration was questioned, actually were registered but under names differing in varying de-

gree from that under which each voted. The contestee's answer to this proof that the registrant and the voter, in each instance, are one and the same, is succinctly stated in the following passages from his brief, to-wit: "We submit that the question of *whether unregistered votes have been cast* should be determined from the records, and certainly in the absence of allegations and proof of fraud the records are the best and only evidence from which to ascertain that fact. The statute, 56-349, 1941 Compilation sub-paragraph 6, specifically makes the original affidavits of registration a part of the official election returns. * * * It was the intent of the Legislature that the County Canvassing Board should examine the registration lists, compare them with the roll of voters on the poll books and determine if unregistered votes were cast."

█ We find it unnecessary to determine the question thus presented for reasons to be stated. Since by stipulation of the parties at the beginning of the trial, the names of only seven voters were challenged as being unregistered and · the trial court found on substantial evidence that the identity of the person voting and the person registered, in each instance, was one and the same, it is perhaps enough to say this presents a strong case for holding the discrepancy in names a mere irregularity not affecting the status of these voters as being duly registered. 29 C.J.S. 68, § 51 under Elections; 18 Am.Jur. 236, § 88; Id. 241, § 97 under "Elections"; Annotation in Ann.Cas.1916E, 408; Briscoe v. Be-

tween Consol. School Dist., 171 Ga. 820, 156 S.E. 654. In State ex rel. Walker v. Bridges, 27 N.M. 169, 199 P. 370, 371, speaking of an earlier registration law than the one in effect at the time of the election here involved, we said: "The registration laws are designed to settle beforehand the question as to who is eligible to vote at any given election. All such questions are primarily determined by the registration board, and thus the turmoil and inconvenience of controversies about the qualifications of voters at the polls on election day are eliminated. In many precincts in the state, without a registration list it would be impossible for all of the voters desiring to vote do so within the time allotted for the holding of the election. As it is, in many precincts it is all that the judges of election can do, even with the exercise of the utmost diligence, to receive the ballots of all the people who desire to vote. *It remains true, nevertheless, that the supreme right guaranteed by the Constitution of the state is the right of a citizen to vote at public elections.* If through no fault of his, but through the fault of election officers, or those whose duty it is to appoint them, his right to participate in public elections is to be denied, great injustice is done the citizen. If, therefore, the regulations of elections may be reasonably construed to entitle the citizen to vote, it should be done." (Emphasis ours.)

It would seem a harsh rule that would deny to a citizen the exercise of his franchise simply because of a discrepancy in

the name as it appears on the registration list and on the poll books where no fraud is present and the elector is otherwise qualified to vote. For reasons about to be stated, however, it becomes unnecessary for us to speak decisively on what is and what is not a mere irregularity in this connection.

The trial court correctly held that it was not bound by the proceedings initiated by the County Canvassing Board before the district court under the provisions of 1941 Comp. § 56-349(6). This conclusion was drawn because of the view that the court in the recount proceeding, docketed as Cause No. 3828, "had sat merely in a ministerial capacity". We need not determine even the correctness of this conclusion. Under the view we take of the statute last mentioned, there was never any authority in the County Canvassing Board to initiate, or jurisdiction in the district court to entertain, the recount proceeding. Section 56-349(6) reads as follows: "The original affidavits of registration, constituting the official registration list and record in the office of the county clerk, together with all affidavits, applications and orders of court modifying the same in the office of the county clerk may, in any county canvass, be considered a part of the official election returns. Whenever it appears, in any county canvass, from a comparison of such records in said county with the poll books from any precinct or election division, or in any state canvass, by a comparison of the certified index of reg-

istered electors, as filed in the office of the secretary of state, with the poll books from any precinct or election division, that ballots have been cast by persons who are not registered and have been included by the precinct election officials in their returns, it shall be the duty of the canvassing board, state or county, as the case may be, before declaring the results of the election (provided said unregistered voters are sufficient in number to change the results), to refer the matter to the district court of the county in which the precinct where such unregistered votes were cast is located, and the district court in the presence of the chairman of the two (2) dominant political parties, and such counsel as they may employ, shall forthwith proceed to hear and determine whether such votes were in fact registered or not. After the court has determined the number and names of the voters who voted without being registered, the court shall, in the presence of the chairman of the two (2) dominant political parties and such counsel as they may employ, open the ballot box of such precinct and examine the ballots cast by such unregistered voters or persons and determine for which candidates such ballots were cast, and certify the results of the court's findings to said canvassing board, and it shall thereupon become the duty of the canvassing board, and the canvassing board shall deduct from each candidate for whom such ballots of unregistered voters were cast from the totals shown by the court's findings to have been cast in favor of such candidates. Pro-

vided, further, that whenever it appears that the election officials have failed and neglected to set down opposite the names of the voters in the poll book and the official registration affidavits the numbers of the ballots cast by the voters as herein provided, and it further appears that unregistered votes have been cast in such precinct, then and in such event, it shall be the duty of the canvassing board to ignore and fail to include in its canvass the entire election returns from such precinct or election division. Provided that where any election board omits to set down opposite the names of the voters in the poll books and the official registration affidavits the numbers of the ballots cast by the voters, with intent to procure the rejection of the vote of such precinct or election division, and the court before whom such matter is heard shall make such finding, then and in such event, if the court can not determine from evidence how said nonregistered voters voted, the number of nonregistered votes shall be deducted from the several candidates in proportion to the number of legal votes received by such candidates in such precinct or election division, and the court shall certify the result of the court's findings in that regard to said canvassing board and the canvassing board shall deduct from each candidate the number of votes of such unregistered voters as has been determined by the court to be deducted."

 The only authority residing in the County Canvassing Board to initiate

a recount before the district court on account of the casting of unregistered votes, as first directed in the foregoing statute, unquestionably is subject to the indispensable condition stated parenthetically that "said unregistered voters are sufficient in number to change the results". The subsequent proceedings necessarily presuppose that the ballots of the unregistered voters are identifiable by the number of the ballot placed opposite the name of each in the poll books, since the court is directed to "open the ballot box of such precinct and examine the ballots cast by such unregistered voters or persons and determine for which candidates such ballots were cast, and certify the results of the court's findings to said canvassing board", etc. It then becomes the duty of the board to deduct from the vote of each candidate in that precinct as found by the court the number of unregistered votes found to have been cast for him, in declaring and certifying the final results for the county.

Such is the course of procedure outlined in the statute where the ballots of unregistered voters are easily identifiable by reason of compliance with the statutory requirement for placing the number of the voter's ballot opposite his name in the poll books. The matter is not so simple, however, where either through negligence or design this statutory mandate is not observed. Literally read and given effect, where the election officials through mere negligence have failed to set down opposite the voter's name in the poll books the

number of the ballot cast by him, and unregistered votes have been cast, the election officials must "ignore and fail to include in its canvass the entire election returns from such precinct"; whereas, if the court finds that the omission so to preserve and identify the number of the ballot cast by each voter was "with intent to procure the rejection of the vote of such precinct", then the court must endeavor to determine from evidence how the unregistered voters cast their ballots, eliminating them from the returns, of course, in the manner hereinabove set forth; and, if it cannot so determine, then a method of elimination by deducting the unregistered votes "from the several candidates in proportion to the number of legal votes received by such candidates" is provided.

We say such is the meaning of the statute—"literally read and given effect"— because the parenthetical condition accompanying the first proviso, viz., that the recount is to be sought by the canvassing board only when "said unregistered voters are sufficient in number to change the result", is not repeated in the statement of the second proviso. Hence, except as it is to be found there by interpretation as a matter of true legislative intent, as few as two unregistered votes cast in the largest precinct in a county would compel the board to "ignore and fail to include in its canvass the entire election returns from such precinct", even though they

could not possibly change the result as to a single office.

It seems quite obvious to us that the legislature intended the condition to apply in the one case as well as in the other and that it runs through and qualifies the right to demand a recount by reason of the casting of ballots by unregistered voters, whether or not the ballot numbers are placed opposite the names of such voters. In neither case does the right to request a recount exist in the canvassing board because of the casting of ballots by unregistered voters unless "said unregistered voters are sufficient in number to change the results". If the condition does not modify the provision for recount in cases where the number of the ballot cast is not preserved in the method directed, then we have this absurd result: Where the omission of the election officials to set down in the poll books opposite the name of the voter the number of the ballot cast by him is merely negligent, but not fraudulent, the vote of the entire precinct is excluded from the canvass; whereas, if said omission is found to be fraudulent in the respect indicated, then the vote, determined in the manner specified, is to be included.

In other words, the voters of a precinct are to be disfranchised if their election officials have been honest, though negligent; but, not so, if they have been dishonest and corrupt. The contestee invokes an application of the statute according to

its literal reading, ignoring the condition preceding it in the statute as properly qualifying that meaning. The district court at the recount proceeding thus construed it. We decline to hold the legislature so intended. At least, we must have language rendering such a construction inescapable before we will so conclude. The language of this sub-paragraph of § 56-349 is not of that kind.

The record reflects rather strongly that, as initiated, this recount was not asked by the County Canvassing Board because of the inclusion in the vote of Rodarte Precinct of unregistered votes. The letter to the district judge quoted hereinabove and employed as a petition for docketing the recount proceeding in the district court, said nothing about unregistered votes, mentioning only the failure of the election officials to make and place tallies in the poll books and asking a recount by reason of such omission. The language of the order fixing the time and place for the recount, directing the clerk to summon the election officials and to notify the chairman of each of the dominant political parties and reciting that the recount would be held in the presence of all of them "and of such other persons [who may] desire to be present", follows more closely that to be found in § 56-349(5) than it does the language of § 56-349(6).

Whether the Canvassing Board gave the statute the same construction we now give it, declining to invoke the recount because of unregistered votes insufficient in number to change the result, we have no way of knowing. Indeed, it is unimportant now to determine since after reaching the district court, rightly or wrongly, the proceeding soon was converted into a recount besought of the district court under sub-paragraph 6 of § 56-349, rather than one requested of the district judge under sub-paragraph 5 of said section. It is so treated by the appellant (contestee) here and we dispose of the appeal on the theory of an attempted recount proceeding under sub-paragraph 6 without expressing an opinion on the propriety or regularity of the conversion.

It follows from the views expressed that the only authority residing in the County Canvassing Board to initiate a recount before the district court on account of the casting of unregistered votes is subject to the indispensable condition that "said unregistered voters are sufficient in number to change the results". The official returns from the Rodarte Precinct show 114 votes cast for contestant and 62 votes cast for contestee as found by the trial court in the contest. Since contestee's majority in the county as certified by the County Canvassing Board, without the returns from the Rodarte Precinct, was only 16 and contestant's majority in this precinct was 52, it becomes obvious that the total number of unregistered votes cast, if all were in truth unregistered, could not possibly affect the result even if each of them be deducted from contestant's majority otherwise existing.

The district court in Cause No. 3828 upon ascertaining, as it did, that only seven unregistered votes had been cast in Rodarte Precinct, should have declined to entertain jurisdiction, leaving the vote of the Rodarte Precinct for inclusion in the official canvass of the county, no ground for its exclusion having been advanced by the canvassing board in its letter to the district judge or found to exist at the recount hearing before the district court.

■ The contestee's reliance on the omission of the election officials to preserve the number of the ballot cast by each voter is urged only in connection with the claim that the vote of the entire precinct was properly excluded because of the participation of unregistered voters. The holding that the number of such voters, if unregistered, was too small to warrant a recount, eliminates this question from the case. Nor is there any merit in the contention that the district court in the contest is bound by the certificate of the County Canvassing Board that contestee is the duly elected sheriff of Taos County in view of its conclusion and ours that the certificate of the County Canvassing Board improperly excluded the returns from the Rodarte Precinct from its tabulations.

It follows from what has been said that the judgment of the district court is correct and should be affirmed and, it is so ordered.

MABRY, BICKLEY, BRICE, and THREET, JJ., concur.