207 P.2d 1017

**COX et al. v. CITY OF ALBUQUERQUE et al.**

No. 5197.

Supreme Court of New Mexico.

June 28, 1949.

Martin A. Threet, Albuquerque, K. Gill Shaffer, Albuquerque, for appellants.

Waldo H. Rogers, Albuquerque, Hugh R. Horne, Albuquerque, Irwin S. Moise, Albuquerque, for appellees.

SADLER, Justice.

We are called upon to decide whether L. 1947, c. 211, providing for the annexation to any incorporated city or town of territory abutting or contiguous thereto, and setting up the machinery for accomplishing the annexation, constitutes an unlawful delegation of legislative power to the board of arbitrators created by the act to perform designated functions in connection therewith. Incidental to determination of this main question, we must also resolve the issue whether the act is bad because enforcing compulsory arbitration on the parties involved and the further question whether contribution in the form of taxes by residents of the annexed territory to the payment of pre-existing bonded indebtedness of the municipality violates N.M. Const. Art. 9, § 12, relative to the incurring of municipal indebtedness.

The enabling act mentioned was adopted by the legislature in 1947. Section 1 thereof provides that when any incorporated city or town shall desire to annex abutting or contiguous territory, its governing body, by resolution, shall declare the benefits of municipal government are, or can be, available within a reasonable time to the owners of such lands, followed by a statement of its desire that such territory be incorporated into the municipality. A copy of the resolution with a copy of the plat of the territory sought to be annexed attached thereto shall be filed in the office of the county clerk of the county in which the city or town is located.

Section 2 creates a board of arbitration to be composed of seven members, selected as later provided in the act, with complete and final authority to determine whether such territory shall or shall not be annexed.

The next succeeding section 3 directs that, within ten days after the filing of the resolution and plat mentioned, the clerk of the town or city shall publish notice of an election at which the qualified voters and owners of real property in the territory involved shall elect three members of the board of arbitration to represent them in the determination whether such territory shall or shall not be annexed.

Section 4 which follows makes it the duty of the governing board of the municipality seeking the annexation, and on or before ten o'clock a. m. on the day of the election above mentioned, to name three members of the board of arbitration, each of whom as in the case of local residence requirement for board members elected from the territory to be annexed, shall be qualified electors and owners of real prop-

erty in the municipality. The members of the seven-man board created being thus equally divided between residents of the territory to be annexed and the municipality, some method of selecting the seventh member had to be provided. Accordingly, in section 5 it is made the duty of the three members elected to represent the annexed territory and the three members selected to represent the municipality to meet and select a seventh or neutral member of the board. The seventh member must be a qualified elector in the county and must reside outside the municipality and outside the territory sought to be annexed. In the event the six members of the board shall be unable to agree upon the seventh member by a two-thirds vote, the district judge of the county in which the municipality is situated is to name him.

Inasmuch as the provisos of the next section, consisting of three sub-sections, are the subject of such heated controversy between counsel as to their meaning and effect, they will be set out herein at length. Section 6 reads:

"(1) When the seven (7) members of the Board of Arbitration shall have been selected, as herein provided, they shall name a Chairman and hold meetings upon the call of the Chairman to determine whether the benefits of the government of the municipality are or can be available within a reasonable time to the territory desired to be annexed. The Board of Arbitration may make such investigation as it may deem advisable in order to obtain information and data as to the availability of the benefits of the municipal government and may require the governing body of the municipality to furnish to it any records of the municipality pertaining thereto. The cost of such investigation shall be paid by the municipality.

"(2) Determination of four (4) of the seven (7) members of the Board of Arbitration shall be final. In the event four (4) or more members of said Board of Arbitration shall determine that the territory shall not be annexed the governing body of said municipality shall not proceed further, nor shall it be entitled to pass any other Resolution seeking to annex such territory for a period of two (2) years thereafter. If four (4) or more members of the Board of Arbitration, however, shall determine that said territory or a part thereof should be annexed to such municipality, then it shall so certify over the signatures of the members of the Board of Arbitration who have made such determination, both to the Clerk of the municipality and the Clerk of the County. Thereupon the annexation shall be deemed complete to all or any as part so certified as proper to be annexed, and the city or town to which the annexation is made shall have the power to pass such ordinances, not inconsistent with law, as will carry into effect the terms of such

annexation and the territory so annexed shall be governed as part of the city or town to which annexation of it is made, and the governing body of such municipality shall promptly take whatever action or proceedings may be required to make the benefits of the government of the city or town available to the territory so annexed within a reasonable time.

"(3) The Final Determination of the Board of Arbitration as herein provided shall be certified not more than 60 days after the selection of the seventh or neutral member."

The position taken by counsel for appellants in their challenge to the validity of the questioned statute, as constituting an unlawful delegation of legislative power to claimed private individuals in the person of the members of a board of arbitration, may best be demonstrated by two quotations from their brief in chief. After referring to the investigation by the board of arbitration to determine availability of the benefits of municipal government for the territory sought to be annexed, preliminary to making a finding on the subject, counsel state:

"An affirmative finding of this fact, if it may be called a fact, rather than a conclusion, does not make the annexation mandatory, but leaves it within the discretion of a majority of the Board of Arbitration to grant or withhold annexation as is shown by Sub-section 2, Section 6, of the Act."

This view of the statute is reiterated and reaffirmed on the very next page of appellants' brief following that on which the preceding quotation is found. It reads:

"The Board of Arbitration could find, or conclude, that the benefits of the government of the municipality are or can be available within a reasonable time to the territory desired to be annexed, and a majority of the Board of Arbitration, under Sub-section 2, Section 6, could arbitrarily determine that such territory should not be annexed. On the other hand, should the Board of Arbitration determine that the benefits of the government of the municipality could not be made available within a reasonable time to the territory desired to be annexed, nevertheless, a majority of the Board of Arbitration could annex such territory. There is no standard of annexation, the finding of which, would make the annexation mandatory, to be found in the Act. The whole legislative function has been delegated to a Board of Arbitration, and its determination, arbitrary, or otherwise, is final."

Thus it is that in clear and unmistakable language counsel present their appraisal of the statute. They must stand or fall on the interpretation thus submitted for approval. There is no middle ground. The legislature either so intended or it did not. It created a board of arbitration and conferred on it unquestioned legislative power

to grant or deny annexation upon the petition of interested parties, with or without reason, and regardless of the board's finding on a material fact ordered, following investigation; or, it intended ascertainment of the fact to be investigated should conclude the question of annexation. It now becomes our duty to determine this matter of legislative intent.

We announce it as our conclusion that the legislature intended the factual test, submitted to the board of arbitration for ascertainment, should prove decisive on the question of annexation. If this be not true, then the directive to the board to investigate, ascertain and find on the question of availability of municipal benefits loses all significance and becomes absolutely meaningless. If, as counsel argue, arbitrary discretion is reposed in the board to grant or deny annexation, then why are the investigation and finding called for? No explanation of the presence in the statute of the requirement is offered, nor does any reasonable explanation suggest itself consistent with an arbitrary power in the board to ignore any finding it may make on the subject.

In urging upon us their construction of the statute counsel emphasize certain language in section 2 thereof creating the board of arbitration consisting of seven (7) members where territory is sought to be annexed "which shall have complete and final authority to determine whether such territory contiguous to the municipality shall or shall not be annexed;" and, again, certain other language in section 3 touching contents of a notice of election to be published, reading:

"Said publication shall further give notice that at said election the qualified electors in the territory desired to be annexed shall elect (3) members of a Board of Arbitration who shall represent them on such Board in the determination of whether such territory shall or shall not be annexed to such municipality."

There can be no question but that, if in employing the quoted language from the section mentioned the legislature intended to confer uncontrolled power to decide the question of annexation without regard to the factual test ordered, the Act would be bad. But why inclusion of the test, if it was to prove inocuous and unavailing? Of course, the whole Act is to be read together. In arriving at true legislative intent we are not permitted to choose given language, isolate it from other portions of the Act, and make its otherwise emphatic tone controlling. Each and every part of the statute, where possible, must be given some effect in an effort to reconcile it in meaning with every other part. Chetham-Strode v. Blake, 19 N.M. 335, 142 P. 1130; Sakariason v. Mechem, 20 N.M. 307,

149 P. 352; State v. Dist. Court, 45 N.M. 119, 112 P.2d 506.

With these principles in mind, it is not difficult to conclude the legislature intended no arbitrary power in the board to grant or deny annexation. It is significant that in the very first section of the Act the test of the right to annex is laid down. When annexation is desired, the governing body of the municipality may, by resolution, "declare that the benefits of the municipal government are or can be available within a reasonable time" to the territory sought to be annexed. Thus at the very outset, the legislature is setting up the test. And when in section 6, it imposes the mandatory duty on the board to investigate, ascertain and find on this vital issue, unless other language of the Act leaves no alternative, we must conclude the overall, fundamental, test so imposed modifies other language throughout the Act. So it is that when in section 2 the Act provides the board "shall have complete and final authority to determine whether such territory contiguous * * * shall or shall not be annexed," it means, and fairly can only mean, the board does so by its finding on the factual test supplied by the Act itself.

Statutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity, hardships, or injustice, to favor public convenience, and to oppose all prejudice to public interests. Although imperfect in form, they should be sustained by the courts, if they can be so construed as to give them sensible effect. State v. Southern Pacific Co., 34 N.M. 306, 281 P. 29; Elkins v. Lallier, 38 N.M. 316, 32 P.2d 759.

The construction appellants' counsel would give to the language of sub-section 2 of section 6 of the Act is not in line with the rules of construction stated which in the past have received the approval of this court. This is demonstrated by a statement taken from their reply brief. They say:

"The language of sub-section 2 of section 6 of the Act *has no connection* with the determination of benefits contained in the preceding sub-paragraph." (Emphasis ours.)

We do not agree with this statement. So to hold is to ignore the rule approved in cases cited above, namely, that in arriving at true legislative intent embraced in a statute, particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

Thus it is that in reading sub-paragraph 2 of section 6, we carry over into it the very test discussed in sub-paragraph 1 of said section, namely, municipal benefits, as the antecedent of the "determination" men-

tioned on which the board's decision shall be final. Exactly such a construction was given qualifying language found in a statute on elections, not repeated later on in the statute, but placed there by us as a matter of true legislative intent in reaching a decision of the case. Miera v. Martinez, 48 N.M. 30, 145 P.2d 487. If the legislature intended, as we entertain no doubt, that the question of municipal benefits mentioned in subparagraph 1 of section 6 should carry over and qualify the language of sub-section 2, then we are fortified in our conclusion that the "complete and final authority" of the board on the question of annexation, spoken of in section 3 of the Act, carries the meaning we heretofore have given it.

The point is also made that legislative power is also unlawfully delegated to the board in the matter of power to fix and change boundaries of the territory to be annexed. We fail to find such is the case. As a matter of fact the governing body of the city or town involved actually determines the boundaries of the area desired to be annexed, as provided in section 1 of the Act. It passes a resolution as the first step in the proceeding declaring that municipal benefits are, or can be, available to the contiguous territory within a reasonable time. A copy of the resolution "together with a copy of the plat of the territory so desired to be annexed" must then be filed in the offce of the County Clerk.

■ It is not claimed the fixing of boundaries by the governing body of the municipality amounts to an unlawful delagation of legislative power. Indeed, the governing body of a city or town may properly perform legislative functions, being a legislative body. Nor do we think the fact the board of arbitration limited its finding of benefits to less than the whole of the area described in the plat, as an incident to which the area subject to annexation became reduced, constitutes an unlawful delegation of legislative power within contemplation of the separation of powers clause in the constitution. N.M.Const. Art. 3, § 1.

Inasmuch as our construction of the enabling act does not find the board of arbitration possessed of the power claimed for it under the Act by counsel for appellants, we might very well end here and now further discussion of this phase of the appeal. Many cases are cited by both sides, the leading one by appellants, at least the one most relied upon, being Udall, Mayor, v. Severn, 52 Ariz. 65, 79 P.2d 347, with which we do not disagree. There, contrary to the situation here present, the legislature reposed in district courts the power to decide the political question of annexation, providing no factual test for ascertainment as the decisive factor on how the question should be resolved.

The parties are in agreement that the legislature cannot delegate the power to

make laws. Neither do they disagree on the proposition that, notwithstanding the limitation just mentioned, the legislature still may enact laws to take effect when certain facts exist, and delegate to some other branch of the government the duty of determining the existence of such facts. Having found the Act in question to be of the latter type, it would seem useless to undertake an extensive review of the cases, there being unanimity of opinion among them on the propositions stated.

It is also urged upon us that the Act is bad because it enforces compulsory arbitration on the parties. Argument of counsel on this point rests largely on the interpretation given the statute by them as vesting arbitrary power in the board to grant or withhold annexation as the uncontrolled discretion of a majority of its members shall dictate. Since, however, we hold the board has no such arbitrary power, the argument loses much of its force. We agree with counsel for appellees that the designation is a misnomer and that the board should be viewed for what it really is, namely, a fact finding board. Cf. Hyde v. Bryan, 24 N.M. 457, 174 P. 419, and Mayer v. Lane, 33 N.M. 18, 262 P. 178. This contention is without merit.

Finally, it is said that L.1947, c. 211, the enabling act, contravenes N.M. Const. Art. 9, § 12, in that at the time of the proposed annexation, the lands of the area annexed will become subject to taxation for retirement of the large municipal indebtedness owed by the City of Albuquerque, in the creation of which the owners of such lands had no voice, nor any opportunity to vote thereon. Even though lands in the annexed area do become subject to taxation for retirement of pre-existing indebtedness of the city, in the creation of which the owners thereof had no voice or vote, there is no violation of the constitutional provision mentioned. 1 McQuillen, Municipal Corporations (2d Ed.) 861, § 311; Mayor, etc., of Town of Valverde v. Shattuck, 19 Colo. 104, 34 P. 947, 41 Am.St. Rep. 208.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE, and COMPTON, JJ., concur.