**Brad MASON, Appellant
(Plaintiff Below),**

v.

**Bernard GOHMANN, Jr., Charles Applegate, and John Schwartz in their respective official capacities as Members of the Marion County Election Board and Stephen Goldsmith, Appellees (Defendants Below).**

No. 49A02–8610–CV–370.

Court of Appeals of Indiana,
Second District.

Oct. 31, 1986.

Lawrence M. Reuben, Atlas, Hyatt & Reuben, P.A., Indianapolis, for appellant.

Gary R. Landau, Buck, Berry, Landau & Breunig, Karen E. Little, City-County Legal Div., Kevin McShane, Michael R. Conner, Peter J. Rusthoven, Barnes & Thornburg, Indianapolis, for appellees.

SHIELDS, Judge.

## I.

### ISSUE

The sole issue on appeal is whether the trial court's determination Stephen Goldsmith is a registered voter and thus qualified as a candidate for the office of Prosecuting Attorney for the Nineteenth Judicial Circuit is contrary to law. Mason unsuccessfully challenged Goldsmith's registration in a declaratory judgment action on the ground Stephen Goldsmith is not duly registered under his proper name. We affirm.

## II.

### LAW

#### A.

Standard of Review

The trial court entered its special findings and conclusions[1] pursuant to request and as provided in Indiana Rule of Trial Procedure 52. Accordingly, to affirm, the specific findings must support the trial court's decision. *Orkin Exterminating Co., Inc. v. Walters* (1984), Ind.App.,

466 N.E.2d 55. Further, in reviewing the validity of the trial court's special findings, as an appellate court we neither weigh the evidence nor determine the credibility of witnesses. If the record discloses either facts or reasonable inferences to support the trial court's findings, the findings are not clearly erroneous and will not be disturbed on appeal. *Smith v. Union State Bank* (1983), Ind.App., 452 N.E.2d 1059. Finally, we are concerned with a negative judgment which can only be challenged as contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815. When a judgment is attacked as contrary to law, it will be set aside only when the evidence is without conflict and can lead to but one result and the trial court has reached an opposite conclusion. *Chico Corp. v. Delaware-Muncie Board of Zoning Appeals* (1984), Ind.App., 466 N.E.2d 472.

#### B.

Registration[2]

Ind.Code § 3-8-1-1 (1986 Supp.) provides "[a] person is not qualified to run for ... a state office ... unless the person is registered to vote in the election district the person seeks to represent...." A person registers to vote by appearing in person before a voter registration officer and signing an affidavit of registration. Ind.Code §§ 3-7-3-22, 23 (1986 Supp.). The original affidavits or forms of registration become "the official registration books," Ind.Code § 3-7-7-7 (1986 Supp.), which constitute the permanent registration record of all voters residing in and entitled to vote in the precinct. Ind.Code § 3-7-3-1 (1986 Supp.) A person whose name appears in the registration books of the precinct of which he is a legal resident is entitled to vote if he is otherwise qualified. Ind.Code § 3-7-3-6 (1986 Supp.)

---

1. The trial court's judgment, including its special findings, appear in an appendix to this opinion. We review only those findings relevant to this decision.

2. The recent recodification of the election statutes did not materially alter the substance of any sections relevant to this issue in effect at times pertinent hereto.

### C.

Transfer[3]

Ind.Code § 3-7-8-1 (1986 Supp.) requires a voter, upon a change of residence, to transfer his voter's registration to the new address.

### III.

### FACTS

The trial court found Stephen Goldsmith registered as a voter of Marion County, Indiana in August of 1968 by signing the affidavit included upon the registration form as Stephen Goldsmith. Then, in September of 1982, Stephen Goldsmith signed the affidavit included upon another registration form then used by the registration board to change the address of a previously registered voter. Goldsmith also signed this affidavit as Stephen Goldsmith. These findings are not disputed by Mr. Mason.

The trial court further found at the time Goldsmith signed his name to the affidavit, the transfer form contained no personalized identification. It was, however, stamped "Used for Change of Name or Transfer" with the words "Change of Name" crossed through and "Ch of A" written above. The trial court found "Ch of A" described "Change of Address." These findings are supported by the evidence. Goldsmith testified the transfer form was blank when he signed it. In addition, the birthdate entered on the form is incorrect. Further, although Goldsmith testified he did not know the precinct designation of his new residence at the time he executed the transfer form, that designation appears on the form.

Finally, the trial court found a registration board employee typed "as per aff on file name changed to L.S. GOLDSMYTH 1/7/83" and affixed a tape stating "GOLDSMYTH, L.S." to the lower right hand corner of the original registration form signed by Goldsmith in 1968. This finding is also supported by the evidence

and, in addition, is not disputed by Mr. Mason.

### IV.

### DECISION

The trial court concluded, and we agree, Stephen Goldsmith is registered to vote in Marion County as Stephen Goldsmith. Goldsmith registered under his proper name by signing the appropriate affidavit in 1968. He again signed his proper name in September of 1982 when he executed the affidavit then used to transfer his address. It is the voter's personal or authorized signature upon the initial registration affidavit or any subsequent affidavit which controls the name under which a person is registered to vote. To allow any letters, words or designation, including a name, affixed by any person other than the voter (excepting, of course, in a situation where the voter is unable to affix his own signature) to affect the validity of the voter's registration is to provide a mechanism by which the integrity of the electoral process could easily be impaired.

Stephen Goldsmith signed the original official registration form as Stephen Goldsmith. The affidavit for transfer referenced on the official registration is also executed by Stephen Goldsmith. Consequently, Stephen Goldsmith is registered as a voter of Marion County on the official records as Stephen Goldsmith. Inasmuch as Goldsmith's other qualifications are not the subject of a challenge, we affirm the trial court's determination he is entitled to vote in Marion County, i.e., he is a registered voter of Marion County. In turn, his candidacy for the office of Prosecuting Attorney of Marion County, Indiana, also not challenged on other grounds, is legal.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

**3.** See footnote 2.

APPENDIX

No. S186–1348

IN THE MARION SUPERIOR COURT

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

This action was commenced September 30, 1986, on the filing by Plaintiff Brad Mason ("Mason") of his Complaint (the "Complaint") against Defendants Bernard Gohmann, Jr., Charles Applegate and John Schwartz, in their respective official capacities as Members of the Marion County Election Board (collectively, the "County Election Board"). In the Complaint, Mason (1) seeks a declaratory judgment that Intervenor Defendant Stephen Goldsmith ("Goldsmith") (a) was not on March 5, 1986, a registered voter of Marion County, Indiana ("Marion County"), and (b) is therefore not qualified to run for the office of Prosecuting Attorney for the Nineteenth Judicial Circuit of Indiana ("Marion County Prosecutor") in the general election scheduled for November, 1986 (the "1986 General Election"); and (2) requests that the County Election Board be ordered to strike Goldsmith's name as the Republican Party candidate for Marion County Prosecutor from the ballot for the 1986 General Election.

On October 1, 1986, Goldsmith filed his Verified Motion of Stephen Goldsmith to Intervene as a Party Defendant ("Goldsmith's Motion to Intervene"), which the Court granted that same day by entering its Order Granting Stephen Goldsmith's Motion to Intervene (the "Intervention Order"), joining Goldsmith in this action as Intervenor Defendant pursuant to IND. TR.R. 24.

On October 3, 1986, this action, having been advanced on the trial calendar as requested by Mason in the Complaint pursuant to IND.TR.R. 57, was called for trial to the Court without a jury. Prior to commencement of the trial, (1) Mason filed his Request for Specific Findings of Fact and Conclusions of Law, pursuant to IND. TR.R. 52 ("Mason's Trial Rule 52 Request"); (2) Mason moved on the record for reconsideration of the Intervention Order, which motion was denied by the Court; and (3) Goldsmith moved on the record to preserve any defenses and motions that he could have asserted within the time within which he would have been required to answer or otherwise respond to the Complaint, which motion was agreed to by all parties and granted by the Court. The action was then tried to the Court without a jury, and all parties rested.

At the conclusion of the trial, Goldsmith asserted on the record the defenses of (1) failure of Mason to exhaust administrative remedies, and (2) the pendency in another court of the issue whether Goldsmith is a registered voter of Marion County. The Court took both defenses under advisement. The Court also granted Mason's Trial Rule 52 Request, and instructed the parties, pursuant to IND.TR.R. 52(C), to submit to the Court proposed findings of fact and conclusions of law by the morning of October 7, 1986.

The Court, having reviewed the Complaint and the other submissions of the parties, having heard and considered the testimonial evidence at trial, having reviewed and considered the exhibits introduced at trial, and being duly and fully advised, NOW ENTERS the following FINDINGS OF FACT, CONCLUSIONS OF LAW and FINAL JUDGMENT:

FINDINGS OF FACT

1. Goldsmith registered as a voter of Marion County in August, 1968, by completing and filing with the Marion County Board of Voter Registration (the "Registration Board") the form supplied by the Board for that purpose (the "Original Registration Form"). Goldsmith's full legal name, "Stephen Goldsmith," was printed on his Original Registration Form, and Goldsmith signed the printed sworn statement on the Original Registration Form (by which a voter attests to his United States citizenship, his age and his residency in the relevant precinct) "Stephen Goldsmith." Goldsmith's wife, Melissa Goldsmith ("Mrs. Goldsmith"), has also registered as a voter

of Marion County by completing and filing with the Registration Board an Original Registration Form. Since registering as voters of Marion County, Goldsmith and Mrs. Goldsmith have voted in numerous primary and general elections in Marion County, and neither of them has been "purged" or otherwise removed by the Registration Board from its records of registered voters.

2. Goldsmith was elected in 1978 as Marion County Prosecutor, and has served in that office, to which he was reelected in 1982, since January of 1979. On March 5, 1986, Goldsmith filed with the Secretary of State of Indiana (the "Secretary of State"), within the time provided by law, a declaration of candidacy for the Republican Party nomination for Marion County Prosecutor ("Goldsmith's Declaration") for the May, 1986 primary election (the "1986 Primary Election"). Goldsmith's Declaration stated that he was a registered voter of Marion County.

3. Following the 1986 Primary Election, the Secretary of State certified to the County Election Board that Goldsmith was the Republican Party candidate for Marion County Prosecutor in the 1986 General Election, and the County Election Board has so listed Goldsmith on the ballot it has prepared for the 1986 General Election.

4. During his service as Marion County Prosecutor, Goldsmith has received and has been advised by law enforcement officials of a number of threats of harm to himself and members of his family. Because of these threats, Goldsmith has taken various actions to help ensure the security of his family and himself, including, *inter alia,* efforts to make it difficult for persons who might wish to harm him or members of his family to learn his residence address. In part because of these security concerns (including the arrest near Goldsmith's then-residence of one of the persons who had threatened him), Goldsmith moved in 1982 to his current residence in Marion County.

5. In September, 1982, Goldsmith and Mrs. Goldsmith advised authorized Registration Board officials that they wished to transfer their registrations as voters of Marion County ("Goldsmith's Registration" and "Mrs. Goldsmith's Registration," respectively) to their current residence address. For purposes of transferring Goldsmith's Registration to his current residence address, Registration Board officials instructed Goldsmith to sign a form then used by the Registration Board both for that purpose and for changes of a voter's name (the "Registration Change Form"). The Registration Change Form bore a stamp stating "Used for Change of Name or Transfer," and contained a printed sworn statement identical to that appearing on the Original Registration Form (save that the voter's age is now attested to be at least eighteen, rather than twenty-one, years). On the Registration Change Form submitted to Goldsmith in September, 1982, the words "Change of Name" were crossed-through by hand, and above them was written by hand the phrase "Ch of A," indicating "Change of Address." Thereafter, Goldsmith signed the printed sworn statement on the Registration Change Form "Stephen Goldsmith," believing that he was simply transferring Goldsmith's Registration to his current residence address and not that he was making any change in the name in which he was registered to vote, as set forth in his Original Registration Form. For purposes of transferring Mrs. Goldsmith's Registration to her current residence address, Mrs. Goldsmith was also instructed by Registration Board officials to sign, and also signed, a Registration Change Form.

6. At about the time that Goldsmith and Mrs. Goldsmith transferred Goldsmith's Registration and Mrs. Goldsmith's Registration to their current residence address, Goldsmith asked Registration Board officials if there were legal means by which the Registration Board could make it more difficult for other persons to discover his current residence address in the Registration Board's computer records of names and addresses of Marion County voters (the "Computer Records"), which the Registration Board had recently decided to develop.

At no time did Goldsmith intend or express to any Registration Board official or employee any intent to make any change in the name in which he was registered to vote, as set forth in his Original Registration Form.

7. At some later date, for purposes of making it more difficult for other persons to learn Goldsmith's current residence address from the Computer Records, a Registration Board employee entered on the Computer Records information about Goldsmith's Registration and his current residence address under the misspelling "L.S. Goldsmyth," and a Registration Board employee also entered on the Computer Records information about Mrs. Goldsmith's Registration and her current residence address under the same misspelling of her last name as "Goldsmyth." A Registration Board employee or employees also made the same respective misspellings on the respective Registration Change Forms that had been signed by Goldsmith and Mrs. Goldsmith. The Court concludes and finds on the basis of the evidence at trial that the misspelling "L.S. Goldsmyth" on Goldsmith's Registration Change Form, which appears on the upper portion of such Registration Change Form, was made by a Registration Board employee without Goldsmith's knowledge after Goldsmith had signed the Registration Change Form, because Goldsmith testified that (a) it was his best recollection that the entire upper portion of the Registration Change Form was blank when he signed it, (b) Goldsmith's birthdate, which was also entered on the upper portion of the Registration Change Form, is stated incorrectly thereon, and (c) Goldsmith did not know at the time he signed the Registration Change Form the precinct for his current residence address, which was also entered on the upper portion of the Registration Change Form.

8. At no time, either in September, 1982 or thereafter, did Goldsmith (a) intend or express any intent to make any change in the name in which he was registered to vote, or (b) authorize, direct, request, sanction or condone any action by the Registration Board to change his name on his Origi-

nal Registration Form, which is the official record of Goldsmith's Registration maintained by the Registration Board. There was no evidence at trial that any Registration Board official or employee had ever received or was ever made aware of (a) any intent by Goldsmith to make any change in the name in which he was registered to vote, or (b) any authorization, direction, request, sanctioning or condonation by Goldsmith of any action by any Registration Board official or employee to change Goldsmith's name on his Original Registration Form.

9. In January, 1983, a Registration Board employee made a notation on Goldsmith's Original Registration Form stating "as per aff on file name changed to L.S. GOLDSMYTH 1/7/83" (the "Notation"), and affixed to the lower right-hand corner of Goldsmith's Original Registration Form a tape stating "GOLDSMYTH, L S" (the "Tape"). No comparable notation was ever made on, and no comparable tape was ever affixed to, Mrs. Goldsmith's Original Registration Form. Goldsmith did not authorize, direct, request, sanction or condone the making of the Notation on, or the affixing of the Tape to, his Original Registration Form, and was not aware until sometime in September, 1986, that these actions had been taken by an employee of the Registration Board.

10. The making of the Notation on, and the affixing of the Tape to, Goldsmith's Original Registration Form were clerical mistakes by a Registration Board employee, and the Notation and the Tape should be deleted by the Registration Board from Goldsmith's Original Registration Form.

11. The Registration Board does not treat clerical or other mistakes by the Registration Board or its employees as affecting the validity of a voter's registration or the qualification or right to vote of any voter, and permits any voter whose registration and qualifications and right to vote may be challenged to cast his vote if the basis of the challenge reflects a clerical or other mistake by the Registration Board or

its employees. A contrary policy by the Registration Board (a) would leave the validity of a voter's registration and a voter's qualification and right to vote (and therefore, a voter's qualification and right to be a candidate for public office) at the mercy of mistakes that might be made, without the knowledge or consent of the voter, by the Registration Board or its employees, and (b) could invite or encourage Registration Board members or employees who are appointed by or affiliated with one partisan political party to make deliberate clerical or other "mistakes" that could adversely affect the qualifications and rights to vote and to be a candidate for public office of a person who is a member of another partisan political party. This would thus put voters and candidates in the position of being required constantly to check their Original Registration Forms to ensure that no potentially disqualifying "mistakes" had been made without their knowledge and consent.

12. At all primary and general elections in Marion County since September, 1982, the computer printed poll list generated from the Computer Records (the "Computer Poll List") used by election officials of both the Democratic and Republican Parties at Goldsmith's precinct ("Precinct Officials") has listed Goldsmith's Registration under the name "L.S. Goldsmyth," but the Original Registration Forms for Goldsmith and other voters of the precinct (which control over the Computer Poll List and the Computer Records themselves in the event of any discrepancy between these and an Original Registration Form) have also been present at Goldsmith's precinct and available to Precinct Officials on election days. At all such elections in which he voted in person at his precinct, Goldsmith has identified himself to Precinct Officials as "Stephen Goldsmith" and has signed his name as "Stephen Goldsmith" next to the entry on the Computer Poll List designated to him by Precinct Officials. At one such election, Goldsmith voted by absentee ballot under his name, "Stephen Goldsmith." Neither the validity of Goldsmith's Registration nor his qualifications and right to vote have ever been challenged by the Registration Board, by Precinct Officials or by others at or in connection with any such election.

13. Mason has not alleged any challenge to the validity of Goldsmith's Declaration or to Goldsmith's qualifications as the Republican candidate for Marion County Prosecutor in the 1986 General Election, other than Mason's claim that Goldsmith was not a properly registered voter of Marion County at the time Goldsmith's Declaration was filed. No evidence was introduced at trial that would support any such other challenge to Goldsmith's Declaration or to Goldsmith's qualifications as the Republican candidate for Marion County Prosecutor in the 1986 General Election, even if any such other challenge had been alleged.

14. Mason has not alleged any claim that Goldsmith has ever attempted to defraud the Registration Board or otherwise to commit any fraudulent act either in signing his Original Registration Form, signing the Registration Change Form or in voting at any election in which he has voted. No evidence was introduced at trial that would support any such claim, even if any such claim had been alleged.

15. No challenge to the validity of Goldsmith's Declaration or to Goldsmith's qualifications as the Republican candidate for Marion County Prosecutor in either the 1986 Primary Election or the 1986 General Election (including any challenge based on the alleged invalidity of Goldsmith's Registration) has been filed by Mason or any other person with the Secretary of State, the State Election Board or the County Election Board.

16. The evidence at trial fully supported the statements made in Goldsmith's Motion to Intervene.

17. To the extent any of the foregoing "Findings of Fact" also constitutes a conclusion of law, it is hereby incorporated by reference in the following "Conclusions of Law."

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of and the parties to this action.

2. Goldsmith's Original Registration Form as maintained by the Registration Board is the official public record of Goldsmith's Registration, and controls over the Computer Records and the Computer Poll List in the event of any discrepancy between these and his Original Registration Form. IND.CODE § 3–7–7–7. *Cf.* IND. CODE § 3–7–3–1.

3. Neither the Registration Change Form signed by Goldsmith nor the deliberate misspelling by a Registration Board employee of Goldsmith's name in the Computer Records (which misspelling was also filled-in by a Registration Board employee on the Registration Change Form, and later appeared in the Computer Poll Lists generated from the Computer Records) was legally sufficient to effect any change in the name in which Goldsmith was registered to vote, as set forth in Goldsmith's Original Registration Form.

4. Goldsmith never intended nor expressed any intent to make any change in the name in which he was registered to vote, and never authorized, directed, requested, sanctioned or condoned (a) any change of his name on his Original Registration Form, or (b) the making of the Notation on, or the affixing of the Tape to, his Original Registration Form. The making of the Notation on, and the affixing of the Tape to, Goldsmith's Original Registration Form were clerical mistakes by a Registration Board employee, and the Notation and the Tape should be deleted by the Registration Board from Goldsmith's Original Registration Form.

5. Because the making of the Notation on, and the affixing of the Tape to, Goldsmith's Original Registration Form were clerical mistakes by a Registration Board employee, these actions (even assuming *arguendo* that such actions could otherwise be sufficient to reflect a change of the name in which a voter is registered to vote), were not and are not legally sufficient (a) to effect any change in the name in which Goldsmith was registered to vote, or in Goldsmith's name on his Original Registration Form, or (b) to affect the validity of Goldsmith's Registration, Goldsmith's qualification and right to vote, or Goldsmith's qualification and right to be a candidate for the office of Marion County Prosecutor in the 1986 Primary Election or in the 1986 General Election.

6. While Indiana election statutes governing the filing of declarations of candidacy and other matters with respect to qualifications to run for public office are to be applied in accordance with their specific provisions, *see Higgins v. Hale* (Ind.1985), 476 N.E.2d 95, 100 (filling of ballot vacancies); *Wilhite v. Mohr* (Ind.App.1985), 485 N.E.2d 131, 132 (same), there is no allegation that Goldsmith has not strictly complied with the specific provisions of such statutes in connection with his candidacy for Marion County Prosecutor in the 1986 Primary Election and the 1986 General Election, other than Mason's claim that Goldsmith was not a properly registered voter of Marion County at the time Goldsmith's Declaration was filed. The evidence at trial would not support any such other allegation that Goldsmith has not strictly complied with the specific provisions of such statutes, even if any such other allegation had been made. If Goldsmith's Registration was valid at the time of the filing of Goldsmith's Declaration and remains valid, Goldsmith has strictly complied with the specific provisions of Indiana statutes governing qualifications to be a candidate for and to serve in the office of Marion County Prosecutor.

7. The only challenge to the validity of Goldsmith's Declaration and his qualifications to be a candidate for Marion County Prosecutor in the 1986 General Election that has been raised by Mason in the Complaint or at trial is the claim that that Goldsmith was not, at the time Goldsmith's Declaration was filed, a duly registered voter of Marion County, which a candidate for the office of Marion County Prosecutor is required to be under IND.CODE §§ 3–8–

1-1 & 3-8-2-7. Any legal issue as to the validity of Goldsmith's Registration must be decided by the same legal standards that govern the validity of any voter's registration and any voter's qualification and right to vote.

8. With respect to the validity of a voter's registration and a voter's qualification and right to vote, the governing rule in Indiana is that, "[i]n the absence of fraud, election statutes generally will be liberally construed to guarantee to the elector an opportunity to freely cast his ballot, to prevent his disenfranchisement, and to uphold the will of the electorate." *Howell v. Blackburn* (1957), 236 Ind. 242, 248–49, 139 N.E.2d 905, 909; *Brown v. Grzeskowiak* (1951), 230 Ind. 110, 128, 101 N.E.2d 639, 649.

9. Absent fraud, a clerical or other mistake by the Registration Board or one of its employees does not and cannot affect the validity of a voter's registration or a voter's qualification and right to vote. 25 Am.Jur.2d *Elections* § 102 at 791, § 111 at 797; 29 C.J.S. *Elections* § 51 at 125; *Miera v. Martinez* (1944), 48 N.M. 30, 145 P.2d 487, 490; *Celler v. Larkin* (Sup.Ct.), 71 Misc.2d 17, 335 N.Y.S.2d 791, 797–98, *aff'd per curiam* (App.Div.), 40 A.D.2d 603, 335 N.Y.S.2d 801, *aff'd per curiam* (1972), 31 N.Y.2d 658, 336 N.Y.S.2d 251, 288 N.E.2d 135; *Overton v. Mayor & City Comm'rs of City of Hendersonville* (1960), 253 N.C. 306, 116 S.E.2d 808, 815; *State* ex rel. *Symmonds v. Barnett* (1923), 182 Wis. 114, 195 N.W. 707, 712. *Cf. Davis v. Hert* (1910), 46 Ind.App. 242, 90 N.E. 634 (clerical error by officials in identifying township in which election was held). A different rule would be contrary to public policy, because (a) it would leave the validity of a voter's registration and a voter's qualification and right to vote (and therefore, a voter's qualification and right to be a candidate for public office) at the mercy of mistakes that might be made, without the knowledge or consent of the voter, by the Registration Board or its employees, and (b) it could invite or encourage Registration Board members or employees who are appointed by or affiliated with one partisan political party to make deliberate clerical or other "mistakes" that could adversely affect the qualifications and rights to vote and to be a candidate for public office of a person who is a member of another partisan political party. This would put voters and candidates in the position of being required constantly to check their Original Registration Forms to ensure that no potentially disqualifying "mistakes" had been made without their knowledge and consent.

10. For the above reasons, Goldsmith is, and at all times since the filing with the Registration Board in August, 1968 of his Original Registration Form has been, a duly registered voter of Marion County and has been so registered in his name, "Stephen Goldsmith." In particular, Goldsmith was such a duly registered voter of Marion County and was so registered in his name, "Stephen Goldsmith," on March 5, 1986, when Goldsmith's Declaration, filed in his name, "Stephen Goldsmith," was filed with the Secretary of State. Mason's claims that Goldsmith was not a duly registered voter of Marion County at the time of the filing of Goldsmith's Declaration and is not now such a duly registered voter are unsupported by the evidence and contrary to law.

11. Goldsmith is qualified to run for the office of Marion County Prosecutor in the 1986 General Election. Mason's claim that Goldsmith is not qualified to run for the office of Marion County Prosecutor in the 1986 General Election is unsupported by the evidence and contrary to law.

12. The County Election Board has properly listed Goldsmith on the ballot it has prepared for the 1986 General Election as the Republican candidate for the office of Marion County Prosecutor. Mason's request that Goldsmith's name be ordered stricken from the ballot for the 1986 General Election as the Republican candidate for that office is unsupported by the evidence and contrary to law.

13. Goldsmith's defense that Mason has failed to exhaust administrative remedies is denied.

14. Goldsmith's defense that the issue of the validity of Goldsmith's Registration is pending before another court is denied.

15. Goldsmith was properly permitted to intervene in this action, and was properly joined as Intervenor Defendant herein, by the Intervention Order entered pursuant to IND.TR.R. 24.

16. To the extent any of the foregoing "Conclusions of Law" also constitutes a finding of fact, it is hereby incorporated by reference in the foregoing "Findings of Fact."

## FINAL JUDGMENT

On the basis of the foregoing "Findings of Fact" and "Conclusions of Law," the Court HEREBY ENTERS FINAL JUDGMENT on the Complaint against Mason and in favor of the County Election Board and Goldsmith, and ORDERS, ADJUDGES AND DECREES that:

1. The declaratory and any other relief requested by Mason in the Complaint is HEREBY DENIED.

2. Costs are assessed against Mason and in favor of the County Election Board and Goldsmith.

ENTERED this 9 day of October, 1986.

/s/ Anthony J. Metz, III
Anthony J. Metz, III
Judge, Marion Superior Court,
Room No. 1